IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| RASHAD KHADIJAH ARNOLD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 115-060 |
| ) | |
| STAN SHEPARD, Warden; ) | |
| MRS. T. BUSSEY, Warden of Care and ) | |
| Treatment; MR. STANLEY JOHNSON, ) | |
| Assistant Engineering Supervisor; ) | |
| SGT. KENNETH HOLLIS, Inmate ) | |
| Supervisor; SGT. GREG PAGE, C.E.R.T. ) | |
| Supervisor; and JIMMIE HANES, Former ) | |
| Inmate, ) | |
| ) | |
| Defendants. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because Plaintiff is proceeding IFP, his complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I.     SCREENING OF THE COMPLAINT**

    **A.     BACKGROUND**

Plaintiff names the following ASMP Defendants: (1) Stan Shepard, Warden; (2) Mrs. T. Bussey, Warden of Care and Treatment; (3) Mr. Stanley Johnson, Assistant Engineering

Supervisor; (4) Sgt. Kenneth Hollis, Inmate Supervisor; (5) Sgt. Greg Page, C.E.R.T. Supervisor; and (6) Jimmie Hanes, a former inmate. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for the present screening, the facts are as follows.

In June of 2013, Plaintiff arrived at the maintenance shop at ASMP to find a piece of broken kitchen equipment at his work station. (Id. at 5.) When Plaintiff recommended how to fix the broken equipment, inmate Jimmie Hanes physically attacked Plaintiff because he did not think Plaintiff should be involved in fixing the equipment. (Id. at 5-6.) Defendants Hollis and Johnson were present but did nothing to stop the attack or get medical help for Plaintiff afterward. (Id. at 6, 7.) Upon "information and belief," Plaintiff thinks that unnamed correctional officials planned the attack because Plaintiff had previously worked with two other inmates who allegedly brought contraband into prison and were fired from a prison work assignment. (Id.) Defendant Hollis also allegedly labeled Plaintiff a snitch to unknown persons at an unknown time prior to the altercation with inmate Hanes. (Id. at 8.)

Plaintiff complained about the attack to Defendant Page. (Id. at 9.) Although Defendant Page called the participants in the attack to his office to inquire as to what happened, Plaintiff "knew this inquisition was going nowhere." (Id. at 10.) Defendant Page told Plaintiff to write a witness statement, but Plaintiff did not complete the task because his "penmanship was unlegible [sic]!" (Id. at 11.) Plaintiff walked back to his dormitory even though his back hurt, and he collapsed on the way. (Id. at 11-12.) Defendant Bussey allegedly passed by Plaintiff without calling for medical assistance. (Id. at 12.) Plaintiff was

eventually taken to the hospital, where a doctor allegedly told Plaintiff he needed surgery that could not be performed until inflammation in his spine decreased. (Id.)

Plaintiff seeks criminal charges against inmate Hanes, who has since been released on probation, and seeks to hold Defendant Shepard liable for not making sure that inmate Hanes was read his Miranda rights during Defendant Page's investigation of the assault and not having inmate Hanes charged with assault. (Id. at 14-15.) Plaintiff further seeks to hold Defendant Page liable for not conducting a proper investigation that would lead to charges against inmate Hanes. (Id. at 20.)

Plaintiff also seeks to hold Defendants Johnson and Hollis liable for not stopping the assault in the maintenance shop, not calling for medical assistance, and allowing the shop to be run in an unsafe manner after Plaintiff reported that contraband was flowing through the shop. (Id. at 16, 18.) In addition to having criminal charges brought against inmate Hanes, Plaintiff seeks an award of nominal, compensatory, and punitive damages against all Defendants. (Id. at 34, 36.)

As to exhaustion of administrative remedies, Plaintiff provides extensive comments and documentation concerning the two grievances he claims satisfy the exhaustion requirement. In his complaint, Plaintiff states that he wrote grievance 185646 regarding "the neurological orthopedic doctor not following up" on an appointment to provide Plaintiff with pills to "straighten my legs." (Doc. no. 1, p. 3.) According to Plaintiff, he filed an appeal on January 21, 2015, and as of the date he signed his complaint on March 23, 2015, he was awaiting a response. (Id. at 3-4, 36.)

Plaintiff also submitted copies of his grievances as an exhibit to his complaint. (See doc. no. 1-1.) On November 4, 2014, Plaintiff states that he filed grievance 185646, but he was made to refile the grievance because he had been given the wrong type of paper by prison officials. (Id. at 13-14.) This grievance "concerned the failure of the neurological orthopedic doctor to follow-up with my appointment" to bring Plaintiff pills "to help straight[en] my legs out." (Id. at 5, 9, 19.) The Warden denied grievance 185646 on January 13, 2015, explaining that the medical director at ASMP found no evidence in the record to substantiate Plaintiff's claim that a doctor had pills to straighten out Plaintiff's legs. (Id. at 14, 17.) A counselor acknowledged receipt of Plaintiff's appeal of grievance 185646 on January 21, 2015. (Id. at 16.) At the time Plaintiff signed his complaint, he was awaiting a response to the appeal of grievance 185646 to the Central Office. (Doc. no. 1, pp. 3-4.)

On January 2, 2015, Plaintiff signed grievance 188579 "informing you that a § 1983 civil action is being filed for the 03 June 2013 aggravated assault by former inmate Jimmie Hanes." (Doc. no. 1-1, pp. 1, 22, 25.) A prison counselor signed for grievance 188579 on January 7, 2015, and on January 20, 2015, the Warden rejected the grievance as "filed out of time." (Id. at 27, 28.) Plaintiff acknowledged receipt of the Warden's response on January 21, 2015, and a prison counselor acknowledged receipt of an appeal that same day. (Id. at 27, 30.) The Central Office refused to address the appeal because Plaintiff "failed to follow the proper procedure for filing the formal grievance" because it was not filed within ten calendar days of when Plaintiff knew or should have known about the facts giving rise to the grievance. (Id. at 29.)

**B.      DISCUSSION**

Plaintiff's complaint should be dismissed because of his failure to properly exhaust administrative remedies.  Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies.  See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008).  The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with

procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1]  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The administrative grievance procedure applicable in this case is governed by the Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(5). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in

---

[1] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

6

order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date he receives the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

Here, Plaintiff has provided documentation showing that he did not follow the requirements for timely filing a grievance about the events forming the basis for his complaint. Plaintiff, clearly aware of the exhaustion requirement as evidenced by his repeated statements in his grievances that he intended to file a § 1983 lawsuit, did not file

7

any grievance mentioning the assault by inmate Hanes until, at the earliest, nearly one year and a half after the altercation, in November 2014. Even then, grievance 185646, by Plaintiff's own admission, dealt with a doctor not providing him with medication. (Doc. no. 1, p. 3; see also doc. no. 1-1, p. 17 (Warden's denial of grievance based on lack of medical evidence to support claim).) To the extent Plaintiff mentioned in his appeal that inmate Hanes should have been arrested, that reference in no way complains about all of the issues now raised by Plaintiff against Defendants Bussey, Johnson, and Hollis related to supposedly allowing the altercation with inmate Hanes to proceed unabated and then failing to provide necessary medical attention. See Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (requiring prisoner to "provide as much relevant information as he reasonably can in the administrative grievance process" and finding that requirement satisfied where "the crux" of the grievances and federal lawsuit were the same).

Likewise, grievance 188579, filed in January of 2015, states that Plaintiff is filing a lawsuit about the assault by inmate Hanes but mentions only Defendants Page and Shepard as not following the proper procedure outlined in a prisoner handbook related to filing reports. (Doc. no. 1-1, p. 25.) Plaintiff never mentions the issues he now raises against Defendants Bussey, Johnson, and Hollis related to supposedly allowing the altercation with inmate Hanes to proceed unabated and then failing to provide necessary medical attention. Both the Warden and the Central Office rejected grievance 188579 as untimely. (Id. at 29, 31.)

Plaintiff's only explanation for not filing a grievance "sooner" than November of 2014 is that he could not write because of his injuries from the altercation with inmate Hanes

8

in June of 2013. (Doc. no. 1, p. 4; doc. no. 1-1, p. 6.)  Plaintiff fails to offer any explanation as to how his injuries prevented him from writing for approximately a year and a half, let alone state when, other than not "sooner" than November of 2014, he was able to write.  Nor is there any explanation for his failure to include in the grievances that he eventually filed any complaints about the circumstances of the assault or his immediate medical treatment about which he now explains.

Moreover, Plaintiff's general, self-serving declarations about an inability to write were included in his appeal of grievance 185646, the crux of which was an allegation that an unnamed orthopedic doctor had not followed up with promised pills for Plaintiff.  (See doc. no. 1-1, p. 6.)  Plaintiff did not offer any explanation for his untimely filing of grievance 188579, the crux of which concerned Plaintiff's altercation with inmate Hanes and an alleged improper investigation by Defendants Shepard and Page.  Prison officials refused to review that grievance at all levels based on the failure to comply with the time limits for filing a grievance.  Filing an untimely grievance does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1157.

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could

> proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").

In sum, the PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Johnson, 418 F.3d at 1159. Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. The record shows Plaintiff failed to follow the proper administrative procedures for timely filing a grievance about the issues raised in his complaint. Therefore, the complaint fails to state a claim upon which relief can be granted. See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

10

**II. CONCLUSION**

For the reasons set forth above, Plaintiff's complaint fails to state a claim upon which relief can be granted. Therefore, the Court **REPORTS** and **RECOMMENDS** that the complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 9th day of September, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA